UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                              CASE NO. 8:17-cr-266-T-23JSS

JOSEPH BISHOP,

_____/

### ORDER

Charged with the possession of a firearm by a convicted felon, Joseph Bishop moves (Doc. 28) to suppress evidence of the firearms discovered on Bishop and the ammunition discovered in Bishop's vehicle.  An August 17, 2017 hearing produced evidence establishing the following facts by a preponderance.

### FINDINGS OF FACT

Patrolling Highland Pines, a neighborhood known for "illegal narcotic activity" and "gun violence," Officer Matthew Drumsta of the Tampa Police Department spotted at 10:37 p.m. a Dodge Durango without a tag light.  Because Florida law requires a functioning tag light, Officer Drumsta stopped the Durango and approached the driver's door.  Zayid "Brandon" Afif sat in the driver's seat and the defendant, Joseph Bishop, sat in the front passenger's seat.  When Officer Drumsta asked Afif for a driver's license, registration, and proof of insurance, Afif responded that he had no registration and had no insurance because Bishop had "just purchased the vehicle earlier in the day or the day before."

After Afif provided a license and Bishop verbally identified himself but before either man produced registration or proof of insurance, Officer Drumsta returned to the patrol car and checked for "any active warrants . . . and also to see if they ha[d] any criminal history." The check of Bishop's background showed a 1999 conviction for felon-in-possession-of-a-firearm and an October 2016 incident in which the Tampa Police Department recovered several firearms from Bishop's residence (or, at least, a residence associated with Bishop).[1] As Officer Drumsta reviewed the results of the background checks, Officer Mike Hinson arrived.

Officer Drumsta mentioned Bishop's criminal history to Officer Hinson, and the two officers approached the Durango's passenger side.[2] Standing next to Bishop's window, Officer Drumsta asked for consent to search the vehicle. Afif deferred to Bishop, who said "sure" or "I guess" or something to that effect. At the hearing, Bishop denied agreeing to the search. Officer Hinson could not hear Bishop's response. After a brief conversation with Bishop, Officer Drumsta opened Bishop's door, and Officer Hinson walked behind the vehicle toward Afif's door. (Gov't Ex. 1 at 8:20)

After Officer Drumsta calmly opened Bishop's door and motioned for Bishop to exit the vehicle, Bishop exited the vehicle (as the video shows) with an assortment

---

[1] Although the October 2016 incident resulted in no charge against Bishop, "sitting on the side of the road," Officer Drumsta knew nothing about the disposition of the October 2016 incident and lacked access to that information.

[2] A dash camera recorded the incident, but Drumsta's mobile microphone (which attaches to Drumsta's uniform) was not working.

of papers in his hand.  (Gov't Ex. 1 at 8:45)  Alluding to the prospect of a taser (none was deployed, displayed, or discussed), Bishop claimed at the hearing that he exited the vehicle "because I didn't want to get electrocuted."  But Bishop concedes that the officers remained "calm" and "civil" throughout the encounter and concedes that neither officer yelled, unholstered a firearm, "pounded on the doors," cursed, or threatened either Bishop or Afif.  Nothing about Bishop's behavior suggested that Bishop "was being forced to exit the car."  At the hearing, Afif forgot what Officer Drumsta asked the two men after Drumsta initially approached the vehicle and forgot the conversation between Drumsta and Bishop, but Afif testified to remembering that Bishop never "offer[ed] to get out of the vehicle on his own."[3]

After exiting under his own power, Bishop walked past Officer Drumsta and stood at an angle to Officer Drumsta, a stance that partly obscured the officer's view of Bishop's right side.  (Gov't Ex. 1 at 8:45–50)  While Bishop stood there, Officer Drumsta saw protruding from Bishop's pocket a silver "clip" that Officer Drumsta's experience caused him to recognize as a knife.  Officer Drumsta asked whether the item was a knife; Bishop acknowledged that it was. When Officer Drumsta asked whether Bishop had "anything [else] on you I need to know about," Bishop initially replied "no."

---

[3] Defense counsel asked, "Do you know if at any point Mr. Bishop offered to get out of the vehicle on his own?" and Afif responded "no." In context, I understood this as testimony that Bishop did not offer to exit the vehicle (rather than as testimony that Afif did not know whether Bishop offered to exit the vehicle).

Officer Drumsta instructed Bishop to return to the "door jamb" of the open passenger door; as the video shows, Bishop entered the vehicle.  (Gov't Ex. 1 at 8:57) Sitting in the front passenger seat, Bishop "started fumbling with the paperwork," which prompted Officer Drumsta to request that Bishop exit the vehicle and face the vehicle's front.  Bishop faced the Dodge with his back toward Officer Drumsta, who began a pat-down of Bishop.  But Bishop moved into a "bladed" position (that is, Bishop turned his right side away from Officer Drumsta) and reached toward his "front and right-side area."  The video confirms that Drumsta halts the pat-down at that moment and guides Bishop toward Officer Hinson.  (Gov't Ex. 1 at 9:28)

While Bishop stood several feet from the vehicle, Officer Drumsta asked a second time whether Bishop "had anything on him that I should know about."  This time, Bishop said "yes"; Drumsta asked "what is it?"; and Bishop said "a firearm." After Bishop admitting carrying a firearm, the officers arrested Bishop and finished the pat-down, which revealed a Taurus 9mm and a Bersa 380.  An inventory search of the vehicle uncovered a loaded magazine in a backpack behind Bishop's seat. Only about nine minutes elapsed between Officer Drumsta's initiating the emergency lights on his patrol car and Bishop's arrest.

## DISCUSSION

As a preliminary matter, Bishop concedes the lawfulness of the initial traffic stop.  Section 316.221, Florida Statutes, requires a functioning tag light; the failed tag light on the Durango vindicates the initial stop.  Rather, Bishop argues that the

- 4 -

officers lacked a reasonable suspicion for the pat-down.  If Bishop voluntarily consented to the vehicle search and exited the vehicle to permit the search (an exit that revealed a knife in Bishop's pocket), no plausible attack on the search remains.

Several factors contribute to the decision to credit Officer Drumsta's testimony that Bishop voluntarily consented to a search of the vehicle and to discredit or dismiss Bishop's and Afif's testimony to the contrary.  First, Officer Drumsta at all times testified credibly.  Second, the video vividly supports Officer Drumsta's version of events.  After Officer Drumsta and Bishop spoke for a minute and a half, Officer Drumsta routinely opened Bishop's door, and Bishop exited the vehicle under his own power.  (Gov't Ex. 1 at 6:50–8:35)  In other words, the video shows Bishop exit the vehicle independently, calmly, and without force or resistance.  Third, Bishop admitted that the officers remained calm and professional throughout the encounter and that the officers neither cursed nor threatened Bishop (either verbally or with a weapon).  Fourth, Officer Hinson agreed that nothing about Bishop's behavior suggested that Bishop "was being forced to exit the car."  Fifth, although Afif claims that Bishop was forced from the Durango, Afif's testimony is suspect because his demeanor and his other attributes establish a doubt about his ability and his willingness to testify accurately.  For example, Afif admitted that he does not want Bishop, a long-time friend, imprisoned again.  For these reasons, the video evidence and the credible testimony show that Bishop more likely (much more likely) than not voluntarily consented to the vehicle search.  *See United States v. Matlock*, 415 U.S. 164,

177 (1974) (affirming the denial of a motion to suppress because the United States "prov[ed] by a preponderance of the evidence . . . voluntary consent to search").

Bishop's consent to the vehicle search resulted in the discovery of the knife. "Safety protocol" dictates that a vehicle's occupants exit the vehicle before a vehicle search. When Bishop exited the vehicle, Officer Drumsta spotted a knife on Bishop. In sum, at night and in a high-crime area Officer Drumsta approached a vehicle occupied by two men, neither of whom could readily produce registration or proof of insurance. A background check revealed Bishop's conviction for a firearms offense and Bishop's recent involvement in a firearms investigation — events that undoubtedly contributed to a reasonable concern for the officers' safety. The officers arrested Bishop after he admitted carrying a firearm. Nothing in this encounter violated the Fourth Amendment.[4]

Even if Bishop declined to consent to the vehicle search, Officer Drumsta could lawfully order Bishop to exit the vehicle without an articulable suspicion that Bishop posed a danger to an officer or to the nearby public. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (holding that an officer in a traffic stop may order a driver to exit

---

[4] On cross-examination, Officer Drumsta agreed with defense counsel that Bishop's criminal history formed the "sole basis" to request consent to search the vehicle. Against the backdrop of the direct examination, I understood this as testimony that nothing other than Bishop's criminal history, the absence of readily verifiable information about the vehicle's ownership, and the presence at night of two men in a high-crime neighborhood motivated the questioning and request. In any event, an officer's questioning constitutes neither a "search" nor a "seizure" and consequently cannot establish a Fourth Amendment violation unless the questioning unreasonably prolongs an encounter. *United States v. Shabazz*, 993 F.3d 431, 436 (5th Cir. 1993) (Garwood, J.). As explained elsewhere in this order, the questioning and the search request did not unreasonably prolong the stop (or, in fact, prolong the stop at all).

the vehicle "as a matter of course"); *Maryland v. Wilson*, 519 U.S. 408 (1997) (extending *Mimms* to an officer's command to a passenger).  After Bishop exited the vehicle, Officer Drumsta observed a knife in Bishop's pocket.  As explained above, the presence at night in a high-crime neighborhood of a man armed with (at least) a knife, previously convicted of felon-in-possession-of-a-firearm, recently subject to a firearms investigation, and who claimed that he lacked registration or proof of insurance because he "just purchased the vehicle that day" established reasonable suspicion for a pat-down.  *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1314 (11th Cir. 2009) (a defendant's presence in a "high-crime area" can contribute to reasonable suspicion); *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005) (McConnell, J.) ("Criminal history contributes powerfully to the reasonable suspicion calculus"); *cf. also United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (Kelly, J.) (observing that "the inability to offer proof of [vehicle] ownership has figured prominently in many of our cases"), *cited with approval by United States v. Olivares-Campos*, 276 Fed.Appx. 816 (10th Cir. 2008) (Gorsuch, J.).[5]

Citing *Rodriguez v. United States*, 135 S.Ct. 1609 (2015), Bishop argues that the officers unlawfully prolonged this nine-minute traffic stop.  At the time Officer Drumsta requested consent to search the vehicle, Bishop had not provided registration and proof of insurance.  Because Bishop had not yet provided the papers

---

[5] In this instance, Bishop's claim to ownership proved true. But, at the time Officer Drumsta asked to search the vehicle and Bishop subsequently exited the vehicle, Officer Drumsta had no opportunity to verify the vehicle's ownership.

(which necessarily meant that Officer Drumsta had no occasion to review the papers and verify the Durango's ownership, registration, and insurance), Officer Drumsta's questioning and request that Bishop exit the vehicle "did nothing to extend the duration of the initial . . . seizure." *United States v. Purcell*, 236 F.3d 1274, 1280 (11th Cir. 2001); *see also Rodriguez*, 135 S.Ct. at 1615 ("[A]n officer's mission includes . . . inspecting the automobile's registration and proof of insurance.") (internal quotation omitted).  Even if Bishop immediately provided the necessary papers, the two-minute delay attendant to Officer Drumsta's questioning and the request to exit the vehicle is "*de minimis*" and establishes no Fourth Amendment violation.  *See Purcell*, 236 F.3d at 1279 (holding that a three-minute delay while an officer awaited the result of a background check "was *de minimis*").

## CONCLUSION

The motion (Doc. 28) to suppress is **DENIED**.[6]

ORDERED in Tampa, Florida, on August 23, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[6] Also, the motion is tardy. A June 30, 2017 order (Doc. 8) required that Bishop move for suppression no later than July 31, 2017. Several days after expiration of the July 31, 2017 deadline, Bishop moved (Doc. 23) to extend the time within which to move for suppression. An August 3, 2017 endorsed order (Doc. 24) denies the requested extension.